### 424.    CURTIS *et al. v.* THE STATE.

RUSSELL, J. The judgment of the trial court, refusing a new trial, is. not erroneous for any reason assigned.    *Judgment affirmed.*

Conviction of manslaughter, from Bibb superior court—Judge Felton.    March 7, 1907.

Argued April 22,—Decided June 26, 1907.

Joe and Monk Curtis were indicted for the murder of John Newsome, and were found guilty of voluntary manslaughter. They excepted to the refusal of a new trial. The parties met in an alley by Newsome's house, where the difficulty occurred, on an afternoon in August. A quarrel with cursing ensued, and Newsome was shot twice. There was testimony that both the Curtises had been drinking, and one of them had foully cursed Newsome's wife, or another woman in his house. Other facts indicated by the evidence will appear from a reading of some of the instructions of the judge

to the jury, hereafter set forth.   The motion for new trial, in addition to the general grounds, assigned error, because:

1. The court admitted in evidence, over objection, a dying declaration of Newsome, written from his dictation by an attending surgeon, and signed ·with his mark, at the hospital to which he had been carried.   He lived 39 or 40 hours after he was shot.   The surgeon advised him that he would die, and asked him if he wanted to make a dying statement.   He was rational and had good sense. The statement was:   "My name is John Newsome.   I live in East Macon.   Joe and Monk Curtis shot me.   I was not drunk. Shot me for nothing.   Joe and Monk Curtis were both drunk. My dying statement."   This, after being written, was read over to Newsome before he signed it.   The grounds of objection were, that such statement, to be admissible, must have been made in the article of death, and the declarant must think he is going to die; and that this declaration expressed an opinion as to the guilt or innocence of the defendants.

2. The court charged the jury the law of dying declarations; the ground of error being that the proof did not show that the declarant was in the article of death, or that he believed he was going to die.

3. 4. The court charged the law of express and implied malice; the movants contending that no deliberate intent to take human life was proved, and such charge therefore being unauthorized and prejudicial.

5. The court charged the law of voluntary manslaughter; the movants contending that no voluntary manslaughter was proved.

6. The court charged:   "Now, the distinction between voluntary manslaughter and justifiable homicide or homicide in self-defense lies here.   Homicide in self-defense is committed upon one who manifestly intends or endeavors by violence or surprise to commit a felony upon one's person.   A felony is an offense punishable by confinement in the penitentiary.   A felony upon one's person would be an assault with intent to murder one; an assault with a deadly weapon, or with a weapon which in the mind of the person assaulted would be of that character as would be reasonably likely to produce the death of the person assaulted; and if, under the fear engendered from the assault thus made, the person really believed that his life was in danger in consequence of the assault

thus made upon him, which he deems is under such circumstances as to reasonably justify the apprehension that his life or limb is in serious danger, likely either to result in serious danger to his body or in the taking of his life, and under those circumstances where the assault is made with violence of that character or by surprise, and under the influence of the fear thus aroused he shoots or cuts and kills, that is a homicide in self-defense." The movants contend that this charge required the jury to believe that Newsome was endeavoring to commit a felony upon them, before they would be justified in taking his life; whereas a man may take the life of another in self-defense under a mere assault and battery, if he believes his life is in danger.

7. The court charged: "Now if you believe the truth of the case to be this, that these defendants being brothers; and I charge you that if they were brothers that each had the same right to defend the other as they would have to defend themselves, because two brothers occupy that relation towards each other that they would each have the same right to defend the brother that one would have to defend himself. If you believe the truth of this case is that these two men, or either of them, were out in front of the place where Newsome lived, cursing either the wife of Newsome or some woman in that house, and that Newsome told him to go on off and to go away, remonstrated with them; and that one or the other of them drew a weapon, if you believe Joe Curtis drew a weapon and made an assault with that weapon by presenting it at Newsome in such a manner as caused Newsome to believe that he was about to be shot by Joe Curtis with that pistol, and that in order to protect himself he secured a paling or railing from a fence near by, with a view of warding off and defending himself against an assault which he believed Curtis was endeavoring to make upon him with a pistol, and, after securing that paling with a view of protecting himself, Curtis shot him with a pistol, giving him a wound from which he died, and that Newsome did not seek to commit any serious personal injury of any character either upon Joe or Monk Curtis until after Joe Curtis had made an assault upon him with a pistol under the circumstances which showed an intention upon the part of Joe Curtis to shoot Newsome with that pistol, you would be authorized to find the defendant Joe Curtis guilty of the crime of murder; and if thereafter, after Joe Curtis, if you

believe that fact is established by the testimony to be true that Joe Curtis did, under the circumstances just narrated, shoot Newsome with the pistol, intending to kill him; and if thereafter, while Newsome was not endeavoring to commit any assault further upon Joe Curtis or upon Monk Curtis, and that Monk Curtis seized the pistol and himself fired upon Newsome, inflicting a wound upon his person from which he died, you would be authorized to find the defendant Monk Curtis guilty of the offense of murder." The grounds of error are, that there was no evidence that Newsome remonstrated with the defendants to leave his home; that the charge was argumentative; and that it did not give the defendants the benefit of their right of self-defense, and presented the State's case too strongly.

8. The court charged: "Now, if you believe the truth of the case is that the evidence does not show the guilt of the defendants or defendant of the offense of murder, but do believe the evidence shows the guilt of both of them, or either of them guilty, of the offense of voluntary manslaughter, or if you believe the evidence shows the guilt of both of them of the offense of voluntary manslaughter, you would be authorized to find a verdict of guilty as to either or both, as you may reach a conclusion as to their guilt. In that connection I charge you this: that if you believe the truth of the case is that these two defendants and Newsome, or Newsome in connection with Wilson, were having a fight there because of the fact that the defendants had been cursing one of the women in the bawdy house there, and while they were thus engaged in a fight, Wilson and Newsome on one side, or Newsome alone on one side, and the Curtis boys on the other, that Newsome drew a paling, and that the Curtises having a pistol or knife, and in pursuance of that mutual fight, all actuated by a desire to fight and a willingness to fight, that they were armed and equipped with the weapons they could quickly get, a pistol or a knife or an axe or a fence-railing, and while in a general fight between the parties at that time shots were fired in that mutual fight in which Newsome was killed, you would be authorized to find, as to the party doing the killing, such party guilty of the offense of voluntary manslaughter; and if only one of them fired the shot, but the other was present aiding and abetting him in the difficulty, even though not himself actually discharging the pistol, but engaged in

the fight, being present aiding and abetting him in the difficulty in which the pistol was used, and one of the Curtis boys fired the shot while the other was present aiding and abetting him in the fight, but rendering him such assistance as he could in the fight, the one not actually firing the shot would be guilty as principal in the second degree, and you would be authorized to find as to such person the same verdict as you would against the principal, if they were all mutually engaged in a fight there together at the time, armed and fighting with such weapons as they had and secured." The movants contend that there was no evidence of mutual combat; for which reason error is assigned on this charge.

*John R. Cooper, Marion W. Harris,* for plaintiffs in error.
*William Brunson, solicitor-general,* contra.